UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JODY ELLIOTT,<br><br>    Plaintiff,<br><br>v.<br><br>CONRAD PROSNIEWSKI, SALEM POLICE DEPARTMENT, CITY OF SALEM, and MAYOR KIMBERLY DRISCOLL<br><br>    Defendants. | No. 16-cv-11750-DLC |

**MEMORANDUM AND ORDER ON**
**<u>DEFENDANTS' MOTION TO DISMISS (Dkt. No. 13)</u>**

Cabell, U.S.M.J

    Jody Elliott (Elliott or "the plaintiff") has brought a *pro se* civil rights lawsuit against the City of Salem, Massachusetts ("the City"), its mayor, Kimberly Driscoll ("Mayor Driscoll"), the Salem Police Department ("SPD"), and SPD Captain Conrad Prosniewski ("Captain Prosniewski") (collectively "the defendants"). The gravamen of Elliott's complaint is that police officers repeatedly trivialized or ignored her complaints that certain neighbors were harassing her, and instead tended to credit the neighbors' own complaints regarding her. The defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, I find that the complaint as

drafted fails to state a viable claim.  The motion to dismiss will therefore be GRANTED.

I. **FACTUAL BACKGROUND**

The complaint, taken as true for the purposes of the motion to dismiss, arises from an ongoing dispute between the plaintiff and her then neighbors and fellow trustees of her condominium association, Honor Segal ("Segal") and Christopher Patzke ("Patzke").  Segal and Patzke reportedly made false and misleading statements about the plaintiff; among other things, they claimed that she was mentally ill and had a long and well documented history of disruptive behavior during association meetings. (Compl. ¶¶ 7, 9, 17, 35).  Segal and Patzke also reportedly sent the plaintiff threatening emails, blocked her driveway, shut off her electricity, recorded her in her home, and posted on the building's front porch biblical quotes highlighting her failings as a Christian.  (*Id.* ¶¶ 16-19, 21-23, 25, 32-35).

Segal and Patzke at some point alleged to the SPD that the plaintiff had painted a swastika and other Nazi-related insignia in the cellar of the building in order to target Segal, who is Jewish, and Patzke, who is gay.  The SPD under Captain Prosniewski's direction conducted an investigation but failed to seriously investigate the plaintiff's complaints, and credited Segal and Patzke's version of events over hers.  At the conclusion of the investigation the Essex District Attorney's office brought

2

criminal charges against the plaintiff.  (Id. ¶¶ 27-28, 36, 38, 40, 45, 55-56, 64-66, 90).

## II. THE COMPLAINT

The complaint asserts eight counts.

Count One alleges that the SPD engaged in selective enforcement by failing to protect the plaintiff when she called them in July 2014 to complain about Patzke.

Count Two is entitled "Neighbor Dispute" and summarizes an incident where the plaintiff called the SPD regarding Patzke's car blocking her from exiting the driveway.  The plaintiff appears to allege that a police report summarizing the incident would have militated against charges being filed against her had it been considered.

Count Three is entitled "Excessive Force" and alleges that an SPD officer frightened the plaintiff and her daughter when he and his colleague went to the plaintiff's unit late one evening and banged loudly on her front door.

Counts Four and Five are lumped together and are entitled "Police Misconduct; Disregard for the Truth (and) Malicious Prosecution." They allege that Captain Prosniewski lied to the plaintiff's attorney and caused her to "los[e] her legal representation."  They also allege that Captain Prosniewski told Patzke when the plaintiff would be at the courthouse so he could intimidate her and put her at risk for arrest or harm.

3

Count Six, like Count One, is entitled "Selective Enforcement" and alleges that the SPD refused to investigate the plaintiff's allegations against Patzke and Segal.

Count Seven is entitled "Failure to Protect" and alleges that SPD Officer Levesque failed to adequately address the plaintiff's complaint following a snowstorm that Patzke was harassing her by moving his car to block the plaintiff's car each time she cleared an area around it.

Count Eight is also entitled "Failure to Protect" and alleges that SPD Levesque on another occasion failed to adequately address the plaintiff's complaint that Patzke had caused damage to the plaintiff's washing machine by moving it from one area of the basement to another.

The court presumes that all of the counts allege constitutional violations and are brought pursuant to 42 U.S.C. § 1983. *See Hamilton v. Arnold*, 135 F. Supp. 2d 99, 102 (D. Mass. 2001) ("Section 1983 provides a federal cause of action to redress violations of the Constitution or other federal laws . . .").

### III. <u>**LEGAL STANDARD**</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include sufficient factual allegations that, when taken as true, demonstrate a plausible claim of relief. *Bell Atlantic v. Twombly,* 550 U.S. 544, 555-58 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more

4

than a sheer possibility that a defendant has acted unlawfully." *Id*. The "plausibility" standard is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556).

When deciding a motion to dismiss under Rule 12(b)(6), the "plausibility" standard requires the court: (1) to distinguish between the complaint's factual allegations, which must be accepted as true, and its conclusory legal allegations which are afforded no credence, and (2) to determine whether the factual allegations "are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Garcia-Catalan v. U.S.*, 734 F. 3d 100, 103 (1st Cir. 2013). The complaint should be dismissed only if "the pleading shows no set of facts which could entitle plaintiff to relief." *Zona v. Clark University*, 436 F. Supp. 2d 287, 288 (D. Mass. 2006).

**IV. ANALYSIS**

A. Counts 1 and 6 – Selective Enforcement

The plaintiff alleges that she called the SPD on several occasions to complain of harassment by Segal and Patzke. When SPD officers responded, however, they reportedly ignored the plaintiff's concerns and instead gave preferential treatment to

5

Segal and Patzke.[1] More specifically, the plaintiff alleges that SPD Officers Johnson, Verrette, Connolly and Burke, after speaking with her and then with Segal and Patzke, told her the SPD was unable to assist her further in resolving her disputes with them. The plaintiff alleges that the officers favored Segal and Patzke because Segal, who is a former Assistant District Attorney, had a long-standing professional relationship with the SPD. The plaintiff alleges that the officers' conduct violates her Eighth Amendment right to be free from cruel and unusual punishment, and her Fourteenth Amendment right to equal protection under that amendment's Equal Protection Clause.

As a threshold matter, the Eighth Amendment is not implicated here because its protections apply to prisoners only. *See Ingraham v. Wright*, 430 U.S. 651, 671-672, n. 40 (1977); *see also Revere v.*

---

[1] In addition to Counts One and Six, the plaintiff advances two other claims against the SPD, including claims for failure to protect (Counts Seven and Eight) and excessive force (Count Three). The defendants argue that all of these claims fail as a matter of law because the SPD is "a municipal department of the City rather than an independent legal entity that is subject to suit," and such claims should properly be brought against the City or the individual SPD officers responsible for the alleged violations. The defendants argue, and the Court agrees, that a police department is not an independent legal entity for purposes of the civil rights based claims the plaintiff brings here. *See e.g., Stratton v. City of Boston*, 731 F. Supp. 42, 46 (D. Mass. 1989) ("[T]he Police Department is not an independent legal entity."); *Henschel v. Worcester Police Dept.*, 445 F.2d 624, 624 (1st Cir. 1971) (noting that the plaintiff could not bring a § 1983 claim against the police department); *Winfield v. Perocchi*, No. 14-12219-IT, 2015 WL 4482940, at *3 (D. Mass. July 22, 2015) (noting that the plaintiff could not bring her claims against the police department directly). However, as a more efficient alternative to dismissing the claims only to allow the plaintiff leave to amend her complaint to name the proper entities, the court will construe the claims brought against the SPD as though they were alleged against the individual SPD officers and/or, where applicable, the City.

*Mass. Gen. Hosp.*, 463 U.S. 239 (1983); *Carapellucci v. Town of Winchester,* 1986 U.S. Dist. LEXIS 17086 (D. Mass. Dec. 1, 1986) (Eighth Amendment's protections apply "only to prisoners incarcerated pursuant to a criminal conviction.").

To succeed on a claim of selective enforcement based on the Fourteenth Amendment's Equal Protection clause, a plaintiff must show that "(1) [she], compared to others similarly situated, was selectively treated and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995)(*quoting Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)).

More specifically, a plaintiff "must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [the plaintiff was] singled . . . out for unlawful oppression." *Rubinovitz*, 60 F.3d at 909-10 (*quoting Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)). This requires the plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Snyder v. Gaudet*, 756 F.3d 30, 35 (1st Cir. 2014)(*citing Cordi-Allen v. Conlon*, 494 F.3d

245, 251 (1st Cir. 2007)). "[T]he First Circuit considers the similarly situated requirement to be a very significant burden." *Wentworth Precious Metals, LLC v. City of Everett*, No. 11-10909-DPW, 2013 WL 441094, at *8 (D. Mass. Feb. 4, 2013) (*quoting Cordi-Allen*, 494 F.3d at 250-51).

The plaintiff does not meet that burden here. First, the complaint as articulated fails to allege that an individual or groups of individuals similarly situated to the plaintiff were somehow treated differently by the SPD in general, and by Officers Johnson, Verrette, Connolly and Burke in particular. Rather, the thrust of the plaintiff's complaint appears to be that SPD officers tended to dismiss her concerns. In the absence of showing that others similarly situated to the plaintiff were treated differently, a plaintiff's selective enforcement claim cannot survive. *See e.g., Smith v. City of Boston*, No. 03-10062-DPW, 2004 WL 1572626, at *5 (D. Mass. July 13, 2004) (landlord's failure to identity other landlords who were treated differently by the city for code violations was fatal to his selective enforcement claim); but compare *Wright v. Town of Southbridge*, No. 07-40305-FDS, 2009 WL 415506, at *6 (D. Mass. Jan. 15, 2009) (plaintiffs' allegations that "we were the only ones to receive these [2-hour parking tickets]" and that a certain law "was enforced only against [the plaintiffs]," while "threadbare," were sufficient to state a plausible selective enforcement claim).

Even assuming that the complaint could be read to assert that Segal and Patzke were individuals similarly situated to the plaintiff who received disparate, more favorable treatment, such that the first prong were satisfied, the complaint still fails to allege that Officers Johnson, Verrette, Connolly and Burke intended with malice or bad faith to injure the plaintiff. To be sure, the plaintiff does allege that the SPD tended to favor Segal because she had a longstanding relationship with them, but that is not the same as alleging facts that would show that the SPD or its officers harbored a malicious or bad faith intent to injure the plaintiff. In that regard, it is also true that the plaintiff alleges that the officers maliciously credited Segal's version of events "with the goal of destroying [the] plaintiff's life," but conclusory statements are insufficient on their own to meet the plaintiff's burden. Rather, the plaintiff would need to allege facts showing that Officers Johnson, Verrette, Connolly and Burke either knew that Segal's version of events were false but credited them anyway, or knew that the plaintiff's complaints had merit but discredited them nonetheless, because they harbored an intent to injure the plaintiff. *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 146 (D. Mass. 2006) ("Even if some of the defendants' actions lacked a rational basis and resulted in [the plaintiff] being treated differently from others similarly situated, she has offered nothing to show that the defendants engaged in an

orchestrated and spiteful effort to get her."); *Smith*, 2004 WL 1572626 at *5 (holding that "pre-existing animosity" between the plaintiff and the defendants was not sufficient to support a finding that defendants harbored a malicious intent to injure the plaintiff). Given the plaintiff's response when asked at the hearing on the motion that she simply did not know why the SPD Officers would treat her differently, she cannot meet her burden. For this reason, moreover, allowing the plaintiff leave to amend the complaint to assert such facts would be futile. Counts 1 and 6 therefore fail to state a viable claim for selective enforcement and will be dismissed.

B. Counts 1, 7 and 8 – Failure to Protect

The plaintiff alleges that she placed several calls to the SPD regarding Patzke's allegedly threatening and harassing conduct. On several of these occasions, SPD Officers Levesque and Verrette reportedly responded and trivialized the nature of the plaintiff's dispute with her neighbors as a "civil complaint" falling outside the SPD's jurisdiction, and allegedly refused to further protect the plaintiff from Segal and Patzke's campaign of harassment. The plaintiff contends that the officers' failure to adequately address her complaints violates her constitutional rights.

The Fourteenth Amendment's Due Process Clause may be violated where (1) the government affirmatively acts to increase the threat

to an individual of third-party private harm, or prevents the individual from receiving federal assistance, and (2) the government's actions are so "egregious" and "outrageous" as to shock the conscious of the court. *See Irish v. Maine,* 849 F.3d 521, 526 (1st Cir. 2017); *Frances-Colon v. Ramirez,* 107 F.3d 62, 64 (1st Cir. 1997). But where the claim is not that the government affirmatively increased the risk of harm to the plaintiff but, rather, simply failed to protect the individual from third-party private violence (even in the face of a known danger) the conduct simply does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989); *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 36 (1st Cir. 2010).

In the present case, there is no allegation that any SPD officer affirmatively acted to increase a threat of violence to the plaintiff. Indeed, there is no serious allegation that the plaintiff was ever at risk of harm by Segal or Patzke. Even assuming for the sake of argument that the police by their reportedly biased treatment fortuitously fostered a culture where Segal and Patzke felt emboldened to continue to harass the plaintiff as alleged, the facts would still not be so egregious or outrageous as to shock the conscience of the court. *See e.g., Morgan v. Town of Lexington*, 138 F. Supp. 3d 82, 90 (D. Mass. 2015) ("Although the Defendants' lack of responsiveness and concern to

11

[the plaintiff's] treatment by fellow students may have been negligent, [e]ven where the government has created or markedly increased a risk of harm, no violation of substantive due process occurs unless the behavior [is] conscience-shocking or outrageous."); *Smith v. Guilford Bd. Of Education*, 226 Fed. Appx. 58, 62 (2nd Cir. 2007) ("Defendant's failure to respond to the harassing and bullying to which [the plaintiff] was subjected . . . while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience.").

In short, Counts 1, 7 and 8 fail to state a valid due process claim for a failure to protect.[2]

C. <u>Count 2 - Neighbor Dispute</u>

Count 2 is based on an incident that reportedly took place on September 7, 2014. The plaintiff contends that Patzke was blocking the plaintiff's access to her car and she called the SPD to request assistance in resolving the dispute. SPD Officer Scaldone responded to the scene and ordered Patzke to move his vehicle. In the course of these events, however, Patzke apparently made a deprecating comment to the plaintiff and her daughter out of Officer Scaldone's earshot.

---

[2] The plaintiff contends that Mayor Driscoll also failed to respond timely to her written requests for assistance in resolving her issues with the SPD. To the extent the plaintiff asserts Counts 1, 7 and 8 against Mayor Driscoll for her failure to act, the claims fail for the reasons discussed above.

12

Accepting these allegations as true, it remains unclear what the thrust of the plaintiff's claim is. For its part, the court discerns no illegality or improper conduct on Officer's Scaldone's part in resolving the dispute the way he did. To the extent the plaintiff is heard to respond that she alleges selective enforcement or a failure to protect, the claim fails for the reasons stated above. Count 2 thus fails to state a claim.

D. Count 3 – Excessive Force

Count 3 arises from an incident that reportedly took place on October 20, 2014. Officer Verrette and another unidentified officer apparently "forcefully banged" on the plaintiff's door to follow-up on Segal and Patzke's criminal complaint that the plaintiff had painted a swastika and other Nazi-related insignia on a building door. The plaintiff alleges that Officer Verrette's "loud banging" on her door frightened her and her daughter and constitutes excessive force.

Claims that a police officer used excessive force in an incident arising outside of the seizure/arrest context are analyzed under the Fourteenth Amendment's substantive due process standard. *Cummings v. McIntire,* 271 F.3d 341, 344 (1st Cir. 2001). The due process protection afforded by the Fourteenth Amendment protects individuals from the "arbitrary action of government," but only conduct that "shocks the conscience" constitutes an arbitrary abuse of power so as to give rise to a violation of an

13

individual's substantive due process rights.  *See Maraj v. Massachusetts,* 836 F. Supp. 2d 17, 28 (D. Mass. 2011).

In the present case, the plaintiff has not cited any authority suggesting that an officer's loud knocking on a person's door without more could be so egregious and outrageous as to shock one's conscience and amount to a due process violation.  This court has also not been able to find any authority lending support to the plaintiff's theory.  Even accepting that every case is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred, the absence of any supporting precedent is telling.  To this court, the facts here would at worst suggest (but not necessarily prove) that Officer Verrette knocked on the plaintiff's door loudly because he wanted to frighten her.  Even if such facts could make out a viable claim for infliction of emotional distress, they still would not be so egregious as to shock the conscious and amount to a due process violation.  Count 3 therefore fails to state a claim and will be dismissed.  *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) (primary inquiry in addressing a Fourteenth Amendment excessive force claim is whether state official's conduct was so egregious or intolerable as to shock the conscience of the court and constitute a constitutional violation as opposed to a mere violation of state tort law).

E. Counts 4 and 5 - Malicious Prosecution

Counts 4 and 5 allege that Captain Prosniewski, who was responsible for formally investigating allegations that the plaintiff had painted a swastika and other Nazi-related insignia on a building door, incorrectly told the plaintiff's attorney that she would receive a court summons in the following weeks when she in fact received it the following day, which in turn (somehow) caused her attorney to withdraw from representing her. The plaintiff also alleges that Captain Prosniewski let Patzke know when the plaintiff was due to appear in court so that he could attend and further harass and intimidate her. The plaintiff contends that Captain Prosniewski's conduct amounts to malicious prosecution.

To prevail on a claim of malicious prosecution, "a plaintiff must establish that [s]he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in [her] favor." *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 103 (2006). "In broad brush, an individual may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated." *Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009). Generally, this is found where the defendant "induces another person to lodge formal criminal charges," and "exercises a peculiar degree of control over the charging official or adamantly presses

15

that official to bring a criminal complaint." *Id.* Malice is found where there was no probable cause for the prosecution and the defendant acted with an improper motive or was motivated by malice. *Beecy v. Pucciarelli*, 387 Mass. 589, 593-94 (1982).

Here, there is simply no basis to infer that Captain Prosniewski acted with malice when he reportedly incorrectly told the plaintiff's attorney when her summons would be issued, or when he invited Patzke to attend the plaintiff's upcoming court appearance. Even if there were, the claim still fails because the plaintiff does not allege that Captain Prosniewski initiated the criminal charges against her, or induced the entity that did – the Essex District Attorney's Office - to initiate charges, or that he exercised a degree of control over that office. Rather, the crux of the plaintiff's allegations is that Captain Prosniewski purposely misstated when the summons would be issued, which caused the plaintiff's attorney to withdraw, and then facilitated Patzke's attendance at her initial appearance, which allowed Patzke to harass her all the more. Whatever cause of action such facts might support, a claim for malicious prosecution is not one of them. Counts 4 and 5 thus fail to state a claim and therefore will be dismissed.

F. Claims Against the City of Salem

Finally, even assuming the plaintiff could show one or more SPD officers violated her constitutional rights as alleged in the

foregoing claims, the claims would all still fail against the City. In order to hold a municipality liable for the constitutional violations of one of its employees, the plaintiff must show that a municipal employee violated her constitutional rights and that the municipality was responsible for the violation. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). To establish that a municipality is responsible for a violation, a plaintiff must show that the municipal employee acted pursuant to a "policy or custom" attributable to the city, that the municipal policy or custom actually caused the plaintiff's injury, and that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference." *Id.* (internal citations omitted). *See also Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978) (municipality can be liable for the constitutional violations of an employee, not on a respondeat superior theory, but because official policy or custom caused the constitutional deprivation); *Bordanaro v. McLeod,* 871 F.2d 1151, 1155 (1st Cir. 1989). Put more simply, in order to hold the City liable for the SPD's conduct, the plaintiff would need to show (1) that the City had in place a "policy or custom" that allowed the SPD to act unconstitutionally, i.e., to selectively enforce the law, to affirmatively exacerbate the risk of harm to an individual, or to use excessive force or induce malicious prosecutions, (2) that the

policy or custom actually led to the constitutional violation that occurred, and (3) that the City was deliberately indifferent to the risk created by its policy or custom.

As discussed above, the complaint does not set forth sufficient facts to show that any SPD officer violated any of the plaintiff's constitutional rights, and any claim against the city would fail for that reason alone.  But even assuming the plaintiff could show a constitutional violation, the complaint fails to plead any facts suggesting the City had a policy or custom in place that was responsible for any constitutional violation the plaintiff suffered.  On the contrary, the complaint is devoid of any facts that reasonably could be construed as alleging a municipal custom or policy.  It follows that the complaint fails to state a valid claim against the City.

## V. CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss is GRANTED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  September 14, 2017